FILED

2017 MAY -3  AM 10: 29

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INFORMATION |
| | ) | |
| Plaintiff, | ) | 1:17 CR 161 |
| | ) | JUDGE PEARSON |
| v. | ) | CASE NO. |
| | ) | Title 18, Section 371, United |
| STEVEN CALDWELL, | ) | States Code; |
| GAYANE LASHINA, | ) | |
| | ) | |
| Defendants. | ) | |

The United States Attorney charges:

GENERAL AND FACTUAL ALLEGATIONS

At all times material to this Information, except where otherwise noted:

1.      Defendant STEVEN CALDWELL (hereinafter, CALDWELL) was a U.S. citizen,

and a resident of Parma, Ohio, within the Northern District of Ohio, Eastern Division.

2.      Defendant GAYANE LASHINA (hereinafter, LASHINA) was a U.S. citizen,

married to CADWELL, and was a resident of Parma, Ohio.

3.      Co-conspirator T.P. was an Armenian national, with lawful permanent resident

status in the United States.

4.      T.P. owned and controlled various corporations which entered into contracts to

provide maid/housekeeping services to various hotels and motels.  These corporations included

Evrica Inter Services Inc. (Evrica I) (incorporated April 10, 2007); Evrica International LLC (Evrica II) (incorporated July 8, 2009); Antelope's Services LLC (Antelope) (incorporated September 16, 2009); and Zeromax LLC (Zeromax) (incorporated July 11, 2012).

5.      T.P. used nominees for the corporations to disguise his ownership and control of those businesses.

6.      T.P., with the assistance of CALDWELL, LASHINA, and others opened and dissolved corporations to impede administrative and criminal investigations of his business operations.

7.      C.P. (T.P.'s wife) was the incorporator/agent of Evrica I.

8.      CALDWELL was the incorporator/agent of Evrica II and Antelope.

9.      S.P. (T.P.'s friend) was the incorporator/agent of Zeromax.

10.     T.P. and his associates hired individuals, many of whom were African and Eastern European immigrants, to work as maids and housekeepers at the hotels and motels with which his companies had contracts.

11.     T.P. required some his employees to sign independent contractor agreements, which specified that the employee was responsible for all federal, state, and local taxes.

12.     T.P., CALDWELL and LASHINA required employees to sign independent contractor agreements in order to work for T.P - controlled cleaning companies.

13.     T.P.'s employees were required to sign in and out on daily sheets, which were then used to bill the hotels and motels for hours worked;

14.     T.P. and CALDWELL provided Form 1099 to employees, falsely treating the employees as independent contractors and avoiding the payment of employment taxes.

15.    T.P. hired his employees, assigned them to work locations, trained and instructed the employees, set employee schedules, and hired substitute and temporary employees; moreover, the employees had no work-related expenses and did not work for any other employers;

16.    When T.P. closed a corporation and established a new corporation, he changed the name of the corporation on the cleaning contracts and maintained the same employees with the same work assignments;

17.    At the end of each year, T.P., and at times R.T. and CALDWELL, at the direction of T.P., provided C.M., not charged herein, an accountant, with a spreadsheet listing amounts of compensation paid to each employee in the preceding year, and T.P. requested that the accountant prepare Forms 1099-MISC (non-employee compensation) for each employee; the Forms 1099 were provided to each employee by the end of the month following each year;

18.    Employers were required to deduct the employees' share of Federal Insurance Contributions Act (FICA) taxes (i.e., Social Security and Medicare) from wages paid to employees, and employers were also required to pay a matching amount of FICA taxes for each employee.  (Title 26, United States Code, §§ 3101, 3102(a), 3111, and 3402));

19.    Employers were required to report and pay FICA taxes on a quarterly basis, on Form 941, which was due at the end of the month following each quarter.

## COUNT 1
### (Conspiracy to Defraud the United States: 18 U.S.C. § 371)

The United States Attorney further charges:

### The Conspiracy

20.     The allegations of paragraphs 1 through 19 of this Information are re-alleged and incorporated by reference as if fully set forth herein.

21.     From on or about January 1, 2009 and continuing to on or about January 31, 2015, the exact dates unknown to the United States Attorney, in the Northern District of Ohio, Eastern Division, and elsewhere, STEVEN CALDWELL, GAYANE LASHINA, T.P. and others known and unknown to the United States Attorney, did voluntarily and intentionally conspire, combine, confederate, and agree together and with each other to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of employment taxes, that is, Social Security and Medicare taxes.

### Object of Conspiracy

22.     The object of the conspiracy was to conceal T.P.'s ownership and control of the corporations in an attempt to impede administrative and criminal investigations concerning T.P. falsely treating employees as independent contractors and avoiding the payment of employment taxes.

**Manner and Means**

23.    The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

a.    T.P. used nominees including CALDWELL, and LASHINA, and others as the incorporators/agents of his corporations to disguise his ownership and control of those businesses;

b.    T.P. directed CALDWELL, LASHINA, and others to lie to law enforcement agents about T.P.'s ownership and control of the corporations; and

c.    CALDWELL and LASHINA made false statements to law enforcement agents about T.P.'s ownership, operation, and control of Evrica, Antelope, and Zeromax.

**Overt Acts**

24.    In furtherance of the conspiracy, and to effect the illegal objects thereof, T.P., CALDWELL, and LASHINA, and others committed and caused to be committed overt acts in the Northern District of Ohio, Eastern Division, and elsewhere, including, but not limited to, the following:

a.    On or about July 8, 2009, T.P. and CALDWELL incorporated Evrica International LLC (Evrica II);

b.    On or about September 16, 2009, T.P. and CALDWELL incorporated Antelope's Services LLC (Antelope);

c.    In or around April 2011, T.P. asked CALDWELL to act as nominee owner of Zeromax, and also asked CALDWELL to provide to T.P. a signature stamp so T.P. could sign CALDWELL's name to documents;

d.      In or around July 2012, T.P. asked S.P. to put Zeromax in S.P.'s name, even though T.P. owned and controlled the business;

e.      At or around the same time, T.P. directed S.P. to obtain a signature stamp in S.P.'s name, and provide that stamp to T.P. so he could sign documents, such as checks, in S.P.'s name;

f.      On or about July 11, 2012, T.P. and S.P. incorporated Zeromax;

g.      On or about April 30, 2014, CALDWELL told agents that T.P. and two "Russian" women approached him to start Antelope;

h.      On or about August 4, 2014, CALDWELL told agents that two "Russian" women showed him what to do regarding operating Antelope;

i.      On or about that same date, CALDWELL told agents that the "Russian" women and T.P. set up how Antelope would operate and determined that all persons hired would be independent contractors;

j.      On or about that same date, CALDWELL told agents that after Antelope closed the two "Russian" women moved back to New York and took all of the records with them;

k.      On or about November 13, 2014, LASHINA told agents that she did not know if T.P. had any cleaning businesses prior to Antelope;

l.      On or about November 18, 2014, T.P. told agents that CALDWELL and LASHINA were the owners of Antelope, and that S.P. was the owner of Zeromax;

m.      On or about the same date, T.P. told agents that he was simply a driver for

Zeromax, and that he had no authority over hiring of Zeromax employees.

In violation of Title 18, United States Code, Section 371.

DAVID A. SIERLEJA
Acting United States Attorney

By: _____*Ann C. Rowland*_____
Ann C. Rowland, Chief
Major Fraud & Corruption Unit